IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| UTICA NATIONAL ASSURANCE COMPANY, | ) ) ) C/A No. 6:24-cv-03933-DCC |
| Plaintiff, | ) ) ) ) |
| v. | ) **OPINION AND ORDER** ) |
| MICKENZIE CUEVAS, MCE INC., a/k/a MC AUTOMOTIVE, INC.; QUADRI SAIVON CHAMBLEE; PROGRESSIVE DIRECT INSURANCE COMPANY; and USAA GENERAL INDEMNITY COMPANY, | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

This matter is before the Court on Defendant Mickenzie Cuevas's ("Cuevas") Motion for Partial Judgment on the Pleadings and to Dismiss. ECF No. 25. Plaintiff Utica National Assurance Company ("Utica") filed a Response in Opposition, and Cuevas filed a Reply. ECF Nos. 28, 33. For the reasons set forth below, Cuevas's Motion is granted in part and this action is dismissed without prejudice.[1]

---

[1] On June 4, 2025, the Parties filed a joint Motion for a Rule 16 Conference. ECF No. 40. Because this action is no longer pending before this Court following the entry of this Order, the Parties' joint Motion is moot and, accordingly, denied.

## I. BACKGROUND[2]

This case arises out of an underlying lawsuit in the Greenville County Court of Common Pleas ("State Court"), *Cuevas v. MCE Inc.*, C.A. No. 23-CP-20-00591 (the "Underlying Lawsuit"), which was filed by Cuevas against Defendants MCE Inc., d/b/a Mike Hovart Chevrolet, ("MCE") and Quadri Saivon Chamblee ("Chamblee"). ECF Nos. 20 at 3; 20-2 at 1–2. The Underlying Lawsuit is premised upon the allegations that on August 3, 2022, Chamblee was operating a vehicle owned by MCE when it struck Cuevas's vehicle. ECF Nos. 20 at 3; 20-2 at 3–4. The complaint in the Underlying Lawsuit (the "Underlying Complaint") alleges that Chamblee was racing another vehicle when the collision occurred and that Chamblee's actions were negligent, grossly negligent, or reckless. *Id*. The Underlying Complaint further alleges that MCE is responsible for Cuevas's injuries through theories of agency or negligent entrustment. ECF Nos. 20 at 3; 20-2 at 6–9.

Utica is MCE's insurer and had issued a South Carolina garage and commercial general liability policy, Policy Number 5453581 (the "Policy"), to MCE, with effective dates

---

[2] On a motion for judgment on the pleadings, as in a motion to dismiss, the well-pled allegations made by the non-moving party, here Utica, are accepted as true. *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405 (4th Cir. 2002); *see also Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011). The Court will consider the pleadings, matters of public record, and documents attached to the motions that are integral to the complaint and whose authenticity is not disputed. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Utica's Second Amended Complaint for Declaratory Judgment supersedes both of its prior complaints. *Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) ("As a general rule, an amended pleading ordinarily supersedes the original and renders it of no legal effect." (citation and internal quotation marks omitted)). Accordingly, this recitation of facts in taken from Utica's Second Amended Complaint.

from May 1, 2022, to May 1, 2023.  ECF No. 20 at 2.  The Policy provides in pertinent part:

> **SECTION II – LIABILITY COVERAGE**
> **A. Coverage**
>> **2. "Garage Operations" – Covered "Autos"**
>> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from "garage operations" involving the ownership, maintenance or use of covered "autos". of covered "autos" . . . .
>> We have the right and duty to defend any "insured" against a "suit" asking for these damages. However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
>>
>>> **3.a.** The following are "insureds" for covered "autos"
>>>> **(2)** Anyone else while using with your permission a covered "auto" you own hire or borrow . . . .
>
> **Exclusions**
>> This insurance does not apply to any of the following:
>> **1. Expected Or Intended Injury**
>> "Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".
>
> **SECTION V – GARAGE CONDITIONS**
> The following conditions apply in addition to the Common Policy Conditions:
>
> **A. Loss Conditions**
>> **2. Duties In The Event Of Accident, Claim, Suit Or Loss**
>> We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:
>> **a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:
>>> **(1)** How, when and where the "accident" or "loss" occurred;
>>> **(2)** The "insured's" name and address; and

3

> > **(3)** To the extent possible, the names and addresses of any injured persons and witnesses.
> 
> **b.** Additionally, you and any other involved "insured" must:
> 
> > **(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.
> > **(2)** Immediately send us copies of any request, demand, order, notice, Summons or legal paper received concerning the claim or "suit".
> > **(3)** Cooperate with us in the investigation or settlement of the claim or Defense against the "suit".
> > **(4)** Authorize us to obtain medical records or other pertinent information
> > **(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.
> 
> **SECTION VI – DEFINITIONS**
> **A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".
> **C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.
> **H.** "Garage operations" includes the ownership, maintenance or use of the "autos" indicated in Section I of this coverage form as covered "autos".
> **O.** "Property damage" means damage to or loss of use of tangible property

ECF Nos. 20 at 5–6; 20-1 at 24–25, 34, 36–38.

Pursuant to a reservation of rights, Utica has provided Chamblee with a defense in the Underlying Lawsuit. ECF No. 20 at 3. Chamblee has neither acknowledged nor responded to any of Utica's or its retained defense counsel's efforts to contact him. ECF No. 20 at 3–4. Utica filed this action seeking a declaration of its rights and obligations under the Policy with respect to Chamblee. ECF No. 20. Specifically, Utica seeks a declaration that it has no duty to defend Chamblee in the Underlying Lawsuit and that it

4

has no duty to indemnify Chamblee in the Underlying Lawsuit. *ECF* No. 20 at 7. In the alternative, Utica seeks a declaration that it may reduce any obligation to indemnify Chamblee for liability in the Underlying Lawsuit to South Carolina's mandatory minimum motor vehicle liability coverage. *Id*.

On November 12, 2024, Cuevas filed this Motion for Partial Judgment on the Pleadings and to Dismiss. ECF No. 25. Cuevas requests a judgment declaring that Utica has a duty to defend Chamblee in the Underlying Lawsuit, and, with respect to Utica's remaining claims, that the Court dismiss this declaratory judgment action. *See id*. On November 26, 2024, Utica filed its Response in Opposition to Cuevas's Motion. ECF No. 28. On December 18, 2024, Cuevas filed her Reply. ECF No. 33. The Motion has been fully briefed and is now ripe for review.

## II.  APPLICABLE LAW

### A.  Motion to Dismiss Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." Such a motion tests the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses . . . . Our inquiry then is limited to whether the allegations constitute 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (internal quotation marks and citation omitted). In a Rule 12(b)(6) motion, the court is obligated "to assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir.

5

2000). However, while the Court must accept the facts in the light most favorable to the nonmoving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

To survive a motion to dismiss, the complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the requirement of plausibility does not impose a probability requirement at this stage, the complaint must show more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

**B.  Motion for Judgment on the Pleadings**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  "[A] motion for judgment on the pleadings is decided under the same standard as a motion to dismiss under Rule 12(b)(6)." *Deutsche Bank Nat'l Trust Co. v. IRS*, 361 F. App'x. 527, 529 (4th Cir. 2010) (citing *Independence News, Inc. v. City of Charlotte*, 568 F.3d 148, 154 (4th Cir. 2009)).  The pleadings on a Rule 12(c) motion should be construed in the light most favorable to the non-movants. *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002).  The key difference between a Rule 12(b)(6) motion and a Rule 12(c) motion is that on a 12(c) motion, the court "consider[s] the answer as well as the complaint" and "documents incorporated by reference in the pleadings." *Fitchett v. Cnty. of Horry, S.C.*, C/A No. 4:10-cv-1648-TLW-TER, 2011 WL 4435756, at *3 (D.S.C. Aug. 10, 2011) (citations omitted).

**C. Choice of Law**

"A federal court sitting in diversity is required to apply the substantive law of the forum state, including its choice-of-law rules." *Francis v. Allstate Ins Co.*, 709 F.3d 362, 369 (4th Cir. 2013) (citations omitted). "Under South Carolina choice of law rules, an insurance policy is governed by the law of the state in which the policy was issued." *Ranta v. Cath. Mut. Relief Soc. of Am.*, 492 F. App'x 373, 375 (4th Cir. 2012) (quoting *Unisun Ins. Co. v. Hertz Rental Corp.*, 436 S.E.2d 182, 184–85 (S.C. Ct. App. 1993)). Since the Policy at issue was issued in South Carolina for a South Carolina corporation covering vehicles primarily garaged in South Carolina, South Carolina law governs its interpretation and enforceability. *See* ECF No. 20-1; *Ranta*, 492 F. App'x at 375. Accordingly, the Court will apply the substantive law of South Carolina in deciding Cuevas's Motion.

### III. DISCUSSION

Utica brings this declaratory judgment action requesting that the Court resolve two questions: (1) whether Utica has a duty to defend Chamblee in the Underlying Lawsuit, and (2) whether Utica has a duty to indemnify Chamblee for any judgment that may result from the Underlying Lawsuit. *See* ECF No. 20. Cuevas's contends that, based upon the pleadings in this action, Utica has a duty to defend the Underlying Action, so judgment on the pleadings is proper. ECF No. 25 at 2–3. Alternatively, Cuevas argues that even if Utica has plausibly alleged it has no duty to defend based on exceptions to the Policy, that claim is based entirely on factual matters that will be resolved in the Underlying Action, and, accordingly, the Court should abstain from exercising jurisdiction over and dismiss this claim. *Id.* at 3. Cuevas further argues that the issue of Utica's duty to indemnify is not yet ripe as the Underlying Action is still pending, and, thus, the Court should also dismiss this claim. *Id.* at 3. In response, Utica contends it has presented a

7

true justiciable controversy on issues that will not be resolved in the Underlying Lawsuit. ECF No. 28 at 4.  Specifically, Utica posits that the State Court will not determine whether Chamblee cooperated with Utica in defending the Underlying Lawsuit, whether Utica owes Chamblee a duty of defense in the Underlying Lawsuit, and whether Chamblee's failure to cooperate partially or wholly eliminates Utica's duty to indemnify Chamblee.  *Id.* at 5.  The Court addresses the arguments regarding Utica's duty to defend and duty to indemnify in the Underlying Lawsuit in turn below.

**A. Duty to Defend**

In South Carolina, "[i]nsurance policies are subject to the general rules of contract construction." *B.L.G. Enters., Inc. v. First Fin. Ins. Co.*, 514 S.E.2d 327, 330 (S.C. 1999) (citations omitted).  The words used in a policy must be given their "plain, ordinary, and popular meaning."  *Id.*  When a policy's language is "clear and unambiguous, the language alone determines the [policy's] force and effect." *Williams v. Gov't Emps. Ins. Co. (GEICO)*, 762 S.E.2d 705, 709 (S.C. 2014) (quoting *McGill v. Moore*, 672 S.E.2d 571, 574 (S.C. 2009)).

"An insurance contract is ambiguous only when it may fairly be understood in more than one way." *Braswell v. Faircloth*, 387 S.E.2d 707, 709 (S.C. Ct. App. 1989).  "Whether a contract is ambiguous is to be determined from examining the entire contract, not by reviewing isolated portions[.]"  *Williams*, 762 S.E.2d at 710.  Accordingly, a party cannot "create an ambiguity by pointing out a single sentence or clause."  *McGill*, 672 S.E.2d at 574.  "As a general rule, insurers have the right to limit their liability and to impose conditions on their obligations provided they are not in contravention of public policy or some statutory inhibition."  *Williams*, 762 S.E.2d at 712.  The insurer bears the burden of

8

establishing an exclusion to coverage. *Boggs v. Aetna Cas. & Sur. Co.*, 252 S.E.2d 565, 568 (S.C. 1979).

"Questions of coverage and the duty of a liability insurance company to defend a claim brought against its insured are determined by the allegations of the complaint. If the underlying complaint creates a possibility of coverage under an insurance policy, the insurer is obligated to defend." *City of Hartsville v. S.C. Mun. Ins. & Risk. Fin. Fund*, 677 S.E.2d 574, 578 (S.C. 2009) (internal citation omitted). But "[i]f the facts alleged in a complaint against [the] insured fail to bring a claim within policy coverage, [the] insurer has no duty to defend." *Id.* However, "the complaint is construed liberally, with all doubts resolved in favor of the insured." *Union Ins. Co. v. Soleil Grp., Inc.*, 465 F. Supp. 2d 567, 573 (D.S.C. 2006).

Utica alleges that it has no duty to defend Chamblee in the Underlying Lawsuit because (1) Chamblee's alleged racing triggers the Policy's "Expected or Intended Injury" exclusion, and (2) Chamblee's alleged failure to cooperate in the Underlying Lawsuit has violated the Policy's "Loss Conditions" provision. ECF No. 20 at 5–7. Cuevas asserts that Utica's pleadings demonstrate on their face that the Underlying Action triggered its duty to defend. ECF No. 25-1 at 8. Additionally, Cuevas contends that Chamblee's conduct at the time of the collision is directly at issue in the Underlying Lawsuit. *Id*. Cuevas further argues that claims regarding Chamblee's alleged failure to cooperate are premature prior to the resolution of the Underlying Lawsuit. ECF Nos. 25-1 at 8–9; 33 at 4–6. In response, Utica argues that the State Court will not address whether Chamblee cooperated in his defense or whether Utica has a duty to defend Chamblee under the Policy, and, thus, the issues present in this action require a separate and distinct

determination of facts and legal rights from those before the State Court in the Underlying Lawsuit.  ECF No. 28 at 5–7.  Utica further contends that Cuevas's request for judgment on the pleadings as to its duty to defend should be denied because, viewing the facts in the light most favorable to Utica, it has sufficiently alleged substantial prejudice in defending the Underlying Lawsuit based on Chamblee's failure to cooperate.  *Id*. at 7–9.  The Court addresses these arguments below.

   1. *Initial Duty to Defend Triggered*

As discussed above, an insurer's duty to defend is determined by the allegations in the underlying complaint.  *City of Hartsville*, 677 S.E.2d at 578.  Here, the Underlying Complaint alleges Cuevas was injured in a collision resulting from Chamblee's negligent operation a vehicle owned by MCE and Chamblee was the permissive user of MCE's vehicle at the time of the collision.  ECF No. 20-2 at 3–4.  As set out above, the Policy provides:

> [Utica] will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from "garage operations" involving the ownership, maintenance or use of covered "autos".  [Utica] ha[s] the right and duty to defend any "insured" against a "suit" asking for these damages.

ECF No. 20-1 at 23.  The Policy extended coverage to "any auto" and covered anyone using an "auto" within MCE's permission.  ECF No. 20-1 at 4, 22, 24.  Viewing broadly the allegations in the Underlying Complaint, there is a possibility that Chamblee is covered as an insured under the Policy.  ECF Nos. 20-1 at 25, 45; 20-2 at 3–4.  Such a possibility of coverage triggers Utica's initial duty to defend Chamblee in the Underlying Lawsuit. *See City of Hartsville*, 677 S.E.2d at 578.  Indeed, Utica does not argue that the

10

allegations in the Underlying Complaint fail to create the possibility of a covered claim against Chamblee. *See* ECF Nos. 20, 28. Accordingly, the Court finds Utica has an initial duty to defend the Underlying Lawsuit, and Cuevas's Motion for Judgment on the Pleadings is granted as to this claim.

2. *Utica's Defenses to Its Duty to Defend*

While Utica does not contest the initial triggering of its duty to defend based on the allegations of the Underlying Complaint, Utica contends it has been relieved of its duty to defend based upon Cuevas's allegation regarding intentional conduct—racing—by Chamblee at the time of the collision and Chamblee's failure to cooperate in the Underlying Lawsuit. ECF Nos. 20; 28 at 1–2, 7–9. Accordingly, the Court turns to the merits of Utica's arguments regarding relief from its duty to defend.

a. Intended Injury Exclusion

Utica argues that Chamblee's actions—participating in racing—preceding the collision were intentional or willful, thus triggering the Policy's exclusion for "expected or intended injury" and barring coverage under the Policy. ECF No. 28 at 9. According to Utica, because of this conduct, which was alleged in the Underlying Complaint, it has no duty to defend Chamblee in the Underlying Lawsuit. *Id.* Cuevas argues the nature of Chamblee's conduct at the time of the collision is a factual issue to be determined in the Underlying Lawsuit and, thus, the Court should abstain from deciding this issue. ECF No. 25-1 at 8, 9–10.

The Court agrees with Cuevas. The Underlying Complaint mixes allegations of negligent and reckless conduct on the part of Chamblee, raising at least a possibility of coverage, which is all that is required to trigger Utica's duty to defend. *See* ECF No. 20-

11

2 at 3–4; *City of Hartsville*, 677 S.E.2d at 578 (internal citation omitted).  While the Underlying Complaint alleges a "nearby witness" saw Chamblee racing prior the collision, it also contains allegations that Chamblee's actions were negligent, grossly negligent, or negligent per se.  ECF No. 20-2 at 3–6.  Based on these allegations, Utica is not relieved from its duty to defend Chamblee in the Underlying Lawsuit pursuant to the intentional acts exception present in its policy.  *Union Ins. Co.*, 465 F. Supp. 2d at 573 ("[T]he complaint is construed liberally, with all doubts resolved in favor of the insured.").[3]

### b. Failure to Cooperate

As to Chamblee's alleged failure to cooperate, South Carolina courts have recognized the potential inequities in permitting an insurer to avoid coverage to an innocent third party merely due to the insured's failure to comply with notice and cooperation provisions.  *Portrait Homes - S.C., LLC v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 900 S.E.2d 245, 272 (S.C. Ct. App. 2023).  Accordingly, South Carolina has adopted rules aimed at "prevent[ing] an insurer from relying on an immaterial breach by its own

---

[3] In the alternative, even if the allegations regarding Chamblee's intentional conduct were not mixed with allegations of negligent conduct, the Court finds it should abstain from the issue because any determination by this Court regarding the intentional nature of Chamblee's alleged actions would conflict with the issues at the heart of the Underlying Lawsuit.  *See United Capitol Ins. Co. v. Kapiloff*, 155 F3d 488, 493 (4th Cir. 1998).  Here, the issue of whether Chamblee's conduct—racing—was intentional, and indeed whether he engaged in such conduct at all, is a question of fact that directly impacts and is intertwined with Cuevas's claim in the Underlying Lawsuit.  Further, two of the parties in the Underlying Lawsuit—Chamblee and USAA—have not appeared in this action, and Chamblee has not been served with process in accordance with Rule 4.  *See Brillhart v. Excess Ins. CO. of Am.*, 316 U.S. 491, 4985 (1942) (explaining when considering whether the state courts could resolve the issues more effectively than federal courts includes an analysis of "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding [and] whether necessary parties have been joined").  These considerations persuade the Court that, even if the allegations of the Underlying Complaint clearly implicated the exception to the Policy cited by Utica, it would be more efficient for the State Court to handle all related issues.

insured as a defense to paying a third party." *Id*. (quoting *Neumayer v. Phila. Indem. Ins. Co.*, 831 S.E.2d 406, 409 (S.C. 2019)).

"[A]n insurer, seeking to relieve itself of liability because of the violation by the insured of a cooperation clause in the policy, has the burden of showing not only that the insured failed to cooperate within the meaning of the policy provision but that it was substantially prejudiced thereby." *Id.* at 272 (quoting *Vaught v. Nationwide Mut. Ins. Co.*, 156 S.E.2d 627, 630 (S.C. 1967)). "[A] liability insurer may successfully defend upon the ground that the insured has violated the cooperation clause of the policy only when the breach has been material and has resulted in substantial prejudice to the insurer." *Id.* (quoting *Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C.*, 433 F.3d 365, 374–75 (4th Cir. 2005) (quoting *Evans v. Am. Home Assurance Co.*, 166 S.E.2d 811, 813 (S.C. 1969))). While an insurer "does not have to overcome 'the almost insurmountable burden' of proving that the verdict was the direct *result* of a lack of cooperation, it must show that the insured's failure to cooperate 'has, in a significant way, precluded or hampered it from presenting a credible defense to the claim.'" *Mora v. Lancet Indem. Risk Retention Grp., Inc.*, 773 F. App'x 113, 119 (4th Cir. 2019) (citation omitted). Under this standard, "possible, theoretical, conjectural, or hypothetical" prejudice does not suffice. *Id.* (citation omitted).

Utica alleges that Chamblee's failure to cooperate with the defense of the underlying action has severely prejudiced Utica. ECF No. 20 at 4. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." *Twombly*, 550 U.S. at 545. Utica's bare allegations of prejudice are insufficient to establish that it has suffered material harm as a result of Chamblee's failure

13

to cooperate in the Underlying Lawsuit at this juncture.  Even accepting all of Utica's well pleaded factual allegations as true and rejecting contravening assertions, Utica must still establish "facial plausibility" as to its claim that its rights have been substantially prejudiced by Defendant Chamblee's failure to cooperate.  Before a verdict against Chamblee has been rendered in the Underlying Lawsuit, any alleged prejudice to Utica resulting from Chamblee's failure to cooperate is hypothetical.  Indeed, Chamblee's cooperation (or lack thereof) in the Underlying Lawsuit may result in no material difference to the suit's outcome.  Thus, without the benefit of a judgment in the Underlying Lawsuit, any determination about whether Chamblee's failure to cooperate substantially prejudiced Utica in the Underlying Lawsuit would be premature.  Accordingly, the Court finds that Utica's claim for declaratory relief on its duty to defend in the Underlying Lawsuit is subject to dismissal because the issue of prejudice based on Chamblee's lack of cooperation is not yet ripe.  This dismissal is without prejudice.

In summary, Cuevas's Motion for partial judgment on the pleadings is granted in part as to Utica's claim on its initial duty to defend, and Cuevas's Motion to Dismiss is granted in part as to Utica's claims regarding the Policy's cooperation requirement as to its duty to defend.  Again, the dismissal is without prejudice.

## B.  Duty to Indemnify

Utica also seeks a declaration by this Court that Utica has no duty to indemnify Chamblee for the claims asserted in the Underlying Lawsuit, or, in the alternative, that it is entitled to a declaration that it may reduce any obligation to indemnify Chamblee to South Carolina's mandatory minimum. ECF No. 20 at 7. Cuevas argues that the issue of indemnity is not yet ripe. See ECF No. 25-1.

The duty to defend is broader than the duty to indemnify. *Penn America Ins. Co. v. Coffey*, 368 F.3d 409, 413 (4th Cir. 2004). Accordingly, a duty to defend may be found even when there is no duty to indemnify. *Id.* While the duty to defend is based on the allegations in the underlying complaint, the "duty to indemnify is based on evidence found by the factfinder." *Ellett Bros., Inc. v. U.S. Fid. & Guar. Co.,* 275 F.3d 384, 388 (4th Cir. 2001). When findings of fact have not been made in the underlying lawsuit, the indemnity claim is not ripe. *Union Ins. Co. v. Soleil Grp., Inc.*, 465 F. Supp. 2d 567, 573 (D.S.C. 2006) (citing *Ellett Bros.,* 275 F.3d at 388). As the Fourth Circuit explained in *Trustguard Insurance Co. v. Collins*, 942 F.3d 195 (4th Cir. 2019), "suits about the duty to indemnify—unlike the duty-to-defend suits—would ordinarily be advisory when the insured's liability remains undetermined." *Id.* at 200. Simply stated, there is no judgment to indemnify unless and until Utica's insured's liability is established in the Underlying Lawsuit. As such, it would be premature and speculative for this Court to issue declaratory relief on the issue of indemnification. Accordingly, the Court concludes that whether Utica has a duty to indemnify Chamblee is not justiciable at this time and should be dismissed pending a decision in the Underlying Lawsuit.

Utica also argues that the Policy is a voluntary policy rather than a legally required policy, and therefore they may be able to more easily avoid liability for an insured's breach of policy conditions. ECF No. 28 at 9. Cuevas argues that this distinction is a misinterpretation of the law as applied in this context, and that the Policy at issue is statutorily mandated motor vehicle liability coverage. ECF No. 33 at 6–8. The Court agrees with Cuevas. Under South Carolina law, an automobile insurance policy must include liability coverage for damages arising from the ownership, maintenance, or use

of motor vehicles. S.C. Code Ann. § 38-77-140. Liability insurance must conform to the Motor Vehicle Financial Responsibility Act, which states that, "[n]o statement made by the insured or on his behalf and no violation of the policy shall defeat or void the policy." S.C. Code Ann. § 56-9-20(b)(3). As outlined above, a decision by this Court as to whether Chamblee engaged in disqualifying intentional conduct is better determined by the State Court and the issue of whether Chamblee materially violated Utica's Policy via failure to cooperate is not yet ripe. After the Underlying Lawsuit has been finally decided, Utica may litigate these issues if they have not already been determined in the State Court.[4] For these reasons, the Court dismisses without prejudice Utica's request for declaratory judgment on its duty to indemnify in the Underlying Lawsuit.[5]

---

[4] In South Carolina, the applicable limitations period for actions on a contract is three years. S.C. Code Ann. § 15-3-530(1).

> Under South Carolina law, the fundamental test for determining whether a cause of action has accrued is whether the party asserting the claim can maintain an action to enforce it. A cause of action accrues at the moment the plaintiff has a legal right to sue on it. *Brown v. Finger*, 124 S.E.2d 781 (S.C. 1962). Stated differently, a cause of action accrues, so as to start the running of the statute of limitations, as soon as the right to institute and maintain an action arises. *Walter J. Klein Co. v. Kneece*, 123 S.E.2d 870, 874 (S.C. 1962).

*Dilmar Oil Co. v. Federated Mut. Ins. Co.*, 986 F. Supp. 959, 968 (D.S.C.), *aff'd sub nom.* 129 F.3d 116 (4th Cir. 1997). Because Utica's dismissed contract claims are not ripe until the conclusion of the Underlying Lawsuit, the statute of limitations for Utica to bring those claims begins upon the entry of a final decision in the Underlying Lawsuit. Utica will therefore not be prejudiced by the present dismissal of these claims.

[5] As the Court finds the issue of indemnification is not yet ripe, it also does not address whether Utica is entitled to a reduction of its obligation to indemnify Chamblee at this time.

## IV. CONCLUSION

For the reasons set forth above, Cuevas's Motion for Partial Judgment on the Pleadings and to Dismiss [25] is **GRANTED IN PART**. The Motion for Judgment on the Pleadings is **GRANTED IN PART** as set out above concerning Utica's duty to defend. Cuevas's Motion to Dismiss is **GRANTED IN PART** as to Utica's remaining claims, which are hereby **DISMISSED** without prejudice. Further, the Parties' joint Motion for Rule 16 Conference [40] is **DENIED AS MOOT**.

IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.
United States District Judge

June 24, 2024
Spartanburg, South Carolina